EDWARD W. SENTELL, RESPONDENT, *v.* THE OSWEGO COUNTY FARMERS' INSURANCE COMPANY, APPELLANT.

*Policy of insurance — when condition against incumbrances violated — when company bound by the knowledge and acts of its agent.*

While plaintiff was engaged in building a house an agent of the defendant applied to him, at the house, to insure it. The agent filled out the application. Among other questions put by the agent to the plaintiff, he asked if there was any incumbrance on the property. Plaintiff said no, but that he owed for materials, etc., and said he was going to incumber it to pay off these debts; and in answer to the question "how much," said "he really did not know; not less than $1,000." The agent inserted in the application that it was incumbered for $1,000, and the policy contained the same statement, and a condition avoiding it, if the incumbrances were increased without the company's consent. The application was not read over to plaintiff. Subsequently plaintiff gave a mortgage on it for $1,200.

In an action on the policy, *held,* that it was to be presumed that defendant meant, by its policy, to allow plaintiff to incumber the property, when the house was completed, for $1,000, and that the giving of a mortgage for a greater sum avoided the policy.

*Held,* further, that even if the plaintiff were to be allowed to mortgage the property to an amount sufficient to pay the debts incurred in building it, it must be shown that such debts amounted to $1,200.

The knowledge of a general agent of an insurance company is the knowledge of his principal.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

*H. L. Howe,* for the appellant.

*S. K. Williams,* for the respondent.

TALCOTT, P. J. :

This is an appeal from a judgment in favor of the plaintiff, recovered at the Wayne County Circuit, in December, 1876. The action was brought on a policy of fire insurance, originally issued to one William H. Sentell and by him, prior to the loss and with the consent of the company, assigned to the respondent. The defense rests upon two conditions contained in the policy. 1. A condition to the effect that if the dwelling-house insured should cease to be occupied in the usual and ordinary manner in which dwelling-houses are occupied, the policy should be null and void until the written consent of the company at the home-office should be obtained; and, second, that if the property should become incumbered after the making of the policy, without the written consent of the company, then it should be void; and also upon an alleged misrepresentation or warranty contained in the application to the effect that the title of the applicant was by deed.

One Claven was the agent of the defendant and applied to the party assured, when the dwelling-house insured was in process of construction, to take insurance thereupon in the defendant's company. The agent Claven acted as agent of the company, and had appointed sub-agents and adjusted losses in its behalf. The party insured was not informed of or acquainted with any limitations upon his agency, but had a right to suppose him a general agent, with as full powers as are conferred upon and exercised by any agent of an insurance company. Claven filled up the application himself, asking William Sentell, the assured, some questions. Sentell told Claven, at the time the latter took the application, that he, Sentell, held the title under a contract; that he should have a title to the premises when the building was completed, but at that time did not have the title.

The application was taken by Claven at the house, which was then unfinished and, as Claven knew and could see, unoccupied. On the question being read by Claven, " How occupied ?" Sentell said that was a hard question to answer. Claven then asked Sentell, " Are you going to occupy it, or some one else ?" Sentell then told him that Mr. Pussey would probably occupy the house. Claven also asked Sentell if there was any incumbrance on the property. Sentell said there was not now, only he owed

for the materials and mechanics for labor on it, and told Claven he was going to put an incumbrance on it for the purpose of clearing up these debts. Claven then asked him "how much?" and Sentell said "he really did not know; not less than $1,000." Claven, the agent, then entered in the application, in answer to the question, "What title has the applicant of premises?" the word "deed," and in answer to the question, "If incumbered, how and for what amount?" $1,000; and that the premises were "occupied by tenant as a dwelling."

Sentell signed the application in pencil, but the same was not read to him, nor did he read it. It was not read over by either Claven or Sentell, and the application was in that form sent to the company which, in reply, issued the policy in question, and returned it with the name of Claven indorsed on it as agent, and without any intimation that his powers as agent were in any manner restricted, or that he was only a special and not a general agent.

Claven delivered the policy so indorsed to William H. Sentell, the insured. The testimony of Claven, the agent, and of Sentell, the insured, in regard to what passed at the interview when the application was made out, are substantially in accord. Though the representations made by Claven in the application were not according to the literal facts existing at that time, they were doubtless intended by him to represent the facts as he supposed they would exist at, or soon after, the issuing of the policy. At all events the facts were truly stated by Sentell, and he in fact knew nothing of the representations which Claven had inserted in the application.

It is held in *Van Schoick* v. *The Niagara Fire Ins. Co.* (68 N. Y., 434), that "the information of the agent is the information of his principal." Therefore, in judgment of law, the defendant in this case was informed that the premises were then, in fact, unoccupied; that Sentell's only title thereto was an executory contract, and that he designed to place an incumbrance on the premises of not less than $1,000. In the face of this information, it goes on and issues the policy in question and receives the premium. The defendant must, therefore, be held to have waived those conditions of the policy and application, which it knew

were not in accordance with the existing facts.   See *Van Schoick* v. *The Niagara Fire Ins. Co.* (*supra*).

But the insured, Sentell, after the issuing of the policy, and while it was running, executed a mortgage of the premises to the Brooklyn Life Insurance Company, dated February 28, 1874, to secure the payment of $1,200. Conceding that the statement in the application, $1,000, made in answer to the question, "If incumbered, and for what amount," would have operated as a permission to execute a subsequent incumbrance on the premises to the amount of $1,000, we do not understand how it can be extended beyond that amount. If it can be extended so as to cover a mortgage for $200 more than the permission given, it might, for aught we see, be extended so as to embrace an amount equal to or exceeding the value of the premises. It is to be presumed that the agent of the company intended to give permission that an incumbrance should be executed in the future for no more than $1,000, and that the company, in issuing the policy, gave its consent that an incumbrance to the extent of $1,000 only might be created in the future. Supposing the statement of Sentell to the insured that he intended mortgaging the property for a sum which would be sufficient to discharge the debts which he had contracted in the erection of the building could, under the circumstances, have the effect of enlarging the amount of the mortgage, to which the agent and the company consented, for which the insured was authorized to incumber the premises in the future, there is no evidence that the amount of the debts to be provided for was equal to the sum of $1,200. Whether the conversation between the agent and Sentell on that subject could have the effect to enlarge the consent in the manner indicated is not presented in the case, because there is no evidence that the amount of the debts for materials and mechanics labor, spoken of, were any greater than the sum of $1,000. Clearly, in order to present this question, it should be shown that the amount of the mortgage which would be required for the purpose of satisfying these debts was equal to the amount for which the mortgage was given, and it is possible in such case that the policy may need reformation.

The plaintiff's counsel objects that the justice at the circuit had no power to allow an amendment by which the new defense

of the mortgage to the Brooklyn Life Insurance Company was set up ; but we think an answer to this objection is found in the fact that the case does not show that any objection was taken to the allowance of the proposed amendment, and the order itself does not appear to have been appealed from, so that it can be reviewed.

Judgment should be reversed and a new trial ordered, costs to abide the event.

HARDIN, J., concurred ; SMITH. J., not sitting.

Ordered accordingly.